**In re Marguerite Sarah BOCK, Debtor.**

No. 98–51365.

United States Bankruptcy Court,
W.D. North Carolina,
Wilkesboro Division.

Jan. 24, 2002.

Peggy A. Palms, Boone, NC, Robert E. Price, Jr., Robert E. Price, Jr. & Associates, P.A., Winston–Salem, NC, for Debtor.

James T. Ward, Sr., Clover, SC, trustee.

Samuel F. Furgiuele, Jr., Boone, NC, Steven G. Tate, Statesville, NC, for Gary Gavenus.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

J. CRAIG WHITLEY, Bankruptcy Judge.

This matter is before the Court upon Motion of the Debtor Marguerite Sarah Bock ("Bock") for Sanctions for Violation of the Automatic Stay and Discharge Injunction, dated January 19, 1999; as well as the Responses filed by Creditors Karl and Bettina Pond(the "Ponds") and their attorney Gary Gavenus ("Gavenus") (collectively, "Respondents"). An evidentiary hearing was conducted on October 18, 2001, and a preliminary ruling was an-

nounced. However, entry of the Order was delayed to afford the parties an opportunity to discuss settlement. These negotiations have not succeeded. As such, the matter is ripe for decision.

For the reasons stated below, the undersigned believes Bock's motion should be GRANTED.

## FINDINGS OF FACT

1. Bock filed a voluntary Chapter 7 bankruptcy petition with this Court on October 13, 1998.

2. Bock's bankruptcy case was routine and uneventful. Upon the filing, her creditors were served with notice of the bankruptcy and of the opportunity to file objections to discharge/dischargeability of their debts. None were filed, so a few months later, Bock received a discharge. Because Bock's bankruptcy was a no-asset case, the case was closed in January 1999.

3. Ten months later, Bock moved to reopen her case, in order to bring this motion. In it, Bock alleges that the Respondents have wilfully violated 11 U.S.C. 524 (2001) and her bankruptcy discharge by continuing to pursue a prepetition collection suit against her after her bankruptcy.

4. At this point, Respondents are willing to acknowledge that they did in fact prosecute a collection suit against Bock after bankruptcy and that this violated her discharge.[1] However, they deny that their actions were willful. They assert a number of defenses, including the assertion that this motion is barred by the *Rooker–Feldman Doctrine;* the action is time barred; and that Bock waived the discharge. Gavenus also contends that Bock did not properly assert the discharge and thus did not mitigate her damages.

5. This controversy arises out of the Pond's 1995 purchase of a home. Bock, an Avery County realtor, represented the seller.

6. The Pond's soon learned that the house that they had purchased had several latent defects. They came to believe that both the seller and his realtors, including Bock, were aware of these defects, and had intentionally concealed the same.

7. In early 1997, the Pond's brought a small claims action against Bock, a sales agent in her firm, and the sellers. The Ponds prevailed, receiving a $1,000 judgment.

8. When Bock and the other defendants appealed, the Pond's decided that they needed an attorney. They retained Gavenus to represent them. Gavenus realized that the Pond's claims were worth more than what could be recovered in small claims court. He had the Pond's dismiss the small claims action, and in September 1997 refiled the action in Avery County Superior Court (the "State Action").

9. Meanwhile, Bock was experiencing financial problems. These led her to file a Chapter 13 bankruptcy case in the Middle District of North Carolina during the first half of 1997 (the "Chapter 13 case").

10. Bock did not schedule the Pond's as creditors in her Chapter 13 case. However, when served with the Pond's complaint in September 1997, Bock's bankruptcy attorney added the claim to the Chapter 13 case. The Ponds were given notice of that proceeding. When they filed a proof of claim, Bock objected. The Ponds claim was disallowed by the Middle District Bankruptcy Court.

---

**1.** During the course of this proceeding, the parties agreed that the resulting state court judgment being entered after discharge, was void. See Order dated 7/27/01

11. Meanwhile in the State Action, when they were served with the Pond's new complaint, the State Action defendants hired Greensboro attorney Kent Lively ("Lively") to represent them. Answers were filed on their behalf.

12. Bock's Chapter 13 filing stayed prosecution of the State Action against Bock, but not against the other defendants.

13. On January 19, 1998, Bock's Chapter 13 case was dismissed. This revived the State Action against Bock.

14. On October 13, 1998, Bock filed a second bankruptcy case—this time under Chapter 7 and in the Western District of North Carolina (the "Chapter 7 case"). Attorney Peggy Palms represented Bock in the Chapter 7 case.

15. The Chapter 7 case triggered another Section 362 stay, legally enjoining prosecution of the State Action against Bock.

16. In the Chapter 7 case, Bock scheduled the Pond's as creditors holding disputed claims. Both the Ponds and Gavenus were included on the case matrix and received case notices. One of these was the First meeting notice. This notice set a deadline for creditors to file objections to the dischargeability (11 U.S.C. § 523) of individual debts, or to a discharge in general (11 U.S.C. § 727).

17. This notice explained the terminal effect of the discharge on a creditor's claims:

"DISCHARGE OF DEBTS. The debtor is seeking a discharge of debts. A discharge means that certain debts are made unenforceable against the debtor personally. **Creditors whose claims against the debtor are discharged may never take action against the debtor to collect the discharged debts.**" (emphasis added).

18. The notice also explained that prompt action by the creditor was required to avoid this result:

"If a creditor believes that the debtor should not receive a discharge of debts under Sec. 727 of the Bankruptcy Code or that a debt owed to the creditor is not dischargeable under Sec. 523(a)(2),(4), (6) or (15) of the Bankruptcy Code, timely action must be taken in the bankruptcy court by the deadline set forth above labeled 'Discharge of Debts.' Creditors considering taking such action may wish to seek legal advice."

19. The Pond's consulted with Gavenus regarding Bock's bankruptcy. Gavenus then called Robert Laney, an attorney who practices in bankruptcy court to seek his advice. Laney confirmed what the notice said: To preserve their claim against Bock, the Pond's would have to bring a dischargeability suit in the bankruptcy court.

20. Although aware of the effect of the discharge, for cost reasons, the Respondents decided not to file a dischargeability suit against Bock. Instead, they chose to pursue the State Action against the other defendants.

21. Bock received her discharge on January 19, 1999, without objection.

22. Around the same time, Bock moved to Tennessee. Bock had understood from her bankruptcy attorney that her Chapter 7 filing arrested further collection proceedings against her. Thinking her involvement in the State Action was over, she did not update Lively of her move.

23. Thus, when in December, 1998, the Avery County Superior Court set the State Action for trial, Bock was unaware of it.

24. On Friday evening, February 18, 1999, Lively phoned Bock at her new home and told her that the trial of the State

Action was to begin Monday morning. Bock was stunned. She protested to Lively that her fight with the Ponds had ended with the entry of her bankruptcy discharge. Couldn't Lively tell the Judge that the claim had been discharged and get the trial stopped or continued? Lively didn't think so. Bock would need to be in Court on Monday and bring a copy of her discharge. The Superior Court would not act without written proof.

25. On Monday, February 21, Bock traveled to the Avery County Courthouse and met with Lively before calendar call. She had been unable to locate her discharge. She also had been unable to reach Palms over the weekend. Bock again asked Lively to tell the Judge that she had been discharged.

26. Lively spoke to Gavenus before Court and told him of what Bock had said. Lively asked Gavenus to dismiss Bock from the action. Gavenus refused. Although aware that the Pond's debt had been discharged, he did not acknowledge the fact. The case is ready for trial, he replied, and he intended to try it.

27. Court began. The presiding judge, Hon. Loto G. Caviness, called the calendar. Reaching the Pond's action, she asked if the parties were ready for trial. Gavenus said "yes." Lively objected, telling the Judge that Bock had been discharged.

28. Gavenus and the Pond's gave the State Court the impression Bock was lying. They did not admit to that Court that Bock was correct and Gavenus argued that the trial should go forward against all defendants.

29. With no written proof of Bock's discharge, Judge Caviness agreed. The trial would begin at 2:00 p.m.

30. Upon leaving the courtroom, Bock tried to call her bankruptcy attorney but was unsuccessful. Palms was in court elsewhere.

31. The trial began at 2:00 p.m. It would run for four days. In the end, a verdict and money judgement would be against Bock (and others) for $35,691.16, plus interest and costs.

32. Before court on the second day of the trial (Tuesday), Gavenus called Laney. Apparently concerned about Bock's protestations, Gavenus asked Laney about the possible consequences of going forward with this trial. He was informed that proceeding violated Bock's discharge, but that Bock would have to reopen her bankruptcy case in order to do something about it.

33. Gavenus began to concoct a theory by which the State Action could proceed. First, he decided (erroneously) that the State Court had jurisdiction to determine dischargeability of the Pond's claim.[2] Second, Gavenus decided that discharge was an affirmative defense to the Pond's claim. Finally, he decided that State rules of civil procedure made Bock's failure to plead this affirmative defense in her answer a waiver of the defense. The trial could proceed.

34. Unfortunately, Gavenus did not share this opportunistic theory with the State Court. Neither he nor the Ponds told Judge Caviness what the Respondents already knew—this debt had been discharged in Bock's bankruptcy and was unenforceable.

2. As described, infra, a state court has concurrent jurisdiction to determine dischargeability of certain debts. However, this does not include debts which are occasioned by fraud and false pretenses, willful and malicious injury, or breach of fiduciary duty. These are reserved to the bankruptcy court and must be asserted prior to discharge.

35. During breaks in the trial, Bock continued to try to phone Palms. However, she was unable to reach her bankruptcy attorney until after the trial was over.

36. When Bock finally reached Palms, Palms sent her a copy of her discharge. Lively used this to file two motions with the State Court seeking to set aside the verdict. The Respondents opposed these motions, using Gavenus' new theory that Bock had waived her discharge by failing to plead it. Each motion was denied.

37. Bock attempted to appeal from the State court verdict. However lacking the financial wherewithal to purchase transcripts, she was unable to perfect that appeal.

38. In a last gasp effort, Bock then reopened her bankruptcy case, and brought the current motion.

39. After the verdict, Karl Pond filed a disciplinary complaint against Bock with the North Carolina Real Estate Commission. A copy of the State Judgment was submitted by Pond to support his allegations. Ultimately, no disciplinary action was taken against Bock by the Real Estate Commission. However, she has had to explain that complaint and the underlying judgment to her employers.

40. The State Judgment was given over to the Avery County Clerk for docketing. The Clerk, however, had previously received a notice of Bock's bankruptcy. Recognizing the significance of the discharge, the Clerk did not docket the judgment against Bock.

41. Bock lost four days work in the state court trial and an additional day in the prosecution of this motion. Another day of work was lost dealing with the Real Estate Commission complaint. On a net basis, Bock's job pays her about $70/day, so the cost to her of missing work is $420.00.

42. Bock has also incurred substantial attorneys' fees due to the prosecution of the State Action. She had to pay Lively $1,750 to defend her in the State Action. She paid her bankruptcy attorney, Peggy Palms $2,150 for prosecuting this motion, and Palms has submitted an affidavit reflecting another $2,030 of fees and expenses. Likewise, substitute counsel, Robert Price has been paid by Bock $1,000 and is owed another $2,041.81.

43. Bock says she has been embarrassed and worried by this situation. However, any such emotional distress was not quantified at trial of this matter.

44. Bock's also says her credit was injured, but this contention was not proven. Normally, entry of a judgment would injure a good credit rating. However, given Bock's two bankruptcy filings, it is very doubtful that she had a credit rating that could be "ruined" by this judgment.

## CONCLUSIONS OF LAW

1. Under Bankruptcy Code Section 524, entry of a debtor's discharge gives rise to a legal injunction restraining any action to "collect, recover, or offset any [prepetition] debt as a personal liability of the debtor...." 11 U.S.C. § 524(a)(2) (2001).

2. The claims asserted by the Pond's against Bock in the State Action are prepetition debts within the meaning of Section 524. Likewise, the Respondents' prosecution of the State Action after bankruptcy was an act to collect a prepetition debt as a personal liability against Bock. Thus, it is clear that the Respondents have violated Section 524.

3. It is equally clear that these violations were willful, and unlawful. When the State Action called for trial, each of the Respondents was on notice of Bock's Chapter 7 bankruptcy case and of the ef-

fect of that bankruptcy on their claims. Each Respondent had received the notice of the bankruptcy filing. Each had been served with notice of the entry of Bock's discharge.

4. Moreover, based on Gavenus' advice, the Pond's made an informed, conscious decision to allow their claim to be discharged in Bock's bankruptcy. At the time of the trial of the State Action, each Respondent was aware that the claim was legally unenforceable.

■ 5. An excellent review of the law surrounding Section 524 is found in *In re Cherry* 247 B.R. 176 (Bankr.E.D.Va.2000), a case factually similar to this one. As Judge St. John surmises in that decision, the discharge is a Bankruptcy Court order, and as such, most courts treat its violation as civil contempt. *See Id.* at 186 (citing *In re Stevens*, 217 B.R. 757, 762 (Bankr. D.Md., 1998)); *Bessette v. AVCO Financial Services, Inc.*, 240 B.R. 147, 154 (D.R.I.1999); *In re Watkins*, 240 B.R. 668, 678 (Bankr.E.D.N.Y.1999).

■ 6. Willful discharge violations are punished by requiring the offender to reimburse the debtor for her damages, costs and attorneys fees. Injunctive relief is available. Finally, punitive damages are often assessed. *See Cherry* at 188 (2000), citing *In re Mickens*, 229 B.R. 114, 118 (Bankr.W.D.Va.1999); *In re Vazquez*, 221 B.R. 222, 228–29 (Bankr.N.D.Ill.1998); *In re Arnold*, 206 B.R. 560, 568 (Bankr. N.D.Ala.1997).

■ 7. In the current case, the offensive conduct has been arrested, albeit grudgingly. In order to deter future violations by Respondents, it is appropriate to permanently enjoin collection of this debt by the Respondents, or others acting on their behalf.

■ 8. Respondents must also reimburse Bock for her damages. The record reflects actual damages to Bock of $420, through the point of trial. These damages were her lost wages for participating in the trial and the prosecution of this motion. Doubtless Bock has some additional damages in the form of travel expenses, but no evidence of these was presented at trial.

■ 9. Bock also seeks damages for emotional distress and humiliation. Certainly, she experienced anxiety and concern, and the Court does not minimize these. However, any such damages were not established to any degree of certainty at trial, and emotional distress damages are not recoverable in a civil contempt proceeding. *In re Walters*, 868 F.2d 665, 670 (4th Cir.1989).

10. Bock has also incurred substantial attorneys' fees, in defending the State Action after bankruptcy and in bringing this motion which should be born by the Respondents. Bock has submitted evidence of the following fees and expenses:

Lively $1,750;

Palms $4,180;

Price $3,041.81;

11. Respondent Karl Pond[3] has objected to portions of the fee request, arguing: (1) a portion of the work performed by attorney Palm's work ($660)was duplicative of the work done by replacement counsel Price; (2) that her hourly rate ($150) was excessive, being $25 per hour higher than Price's rate (a reduction is requested of $505); and (3) that some of the work ($404) was unnecessary, as it

---

**3.** At some point, the Ponds separated. This response to Bock's attorneys fee statements, dated November 26, 2001 was by Karl Pond only.

related to conferences with persons not connected with the trial of this matter.

12. Having reviewed the fee statements, and in consideration of what has transpired in the prior proceedings in this cause, the Court allows $3985.00 of Palms request, and disallows $195. No reduction is made to the hourly rate, as the hourly rate itself is reasonable, and the rate of one attorney in a given city is not determinative of a reasonable rate for a second attorney in another city. Karl Pond's other arguments have some merit. A reduction of $195 is deducted because Price, and not Palms prosecuted this motion from May 10, 2001 forward, and Palms work is duplicative of Price's in this respect.

13. No objection was made to the fees requested for Price and those of Lively. The Court allows these as requested in the amounts of $3,041.81 for Price and $1,750 for Lively.

14. In sum, the Respondents should compensate Pond for her damages, totaling $420; and her attorneys' fees of $8,776.81, for a total of $9,196.81. This is a joint and several liability.

15. The Pond's argue that they were only relying upon Gavenus' advice in pursuing the State Action and should not be fined. Their argument is opportunistic, but not exculpatory.

16. In the first place, the Ponds were aware that their claims had been discharged and could not be pursued. However, even if this were not the case, advice of counsel is not a defense to civil contempt. As the Fourth Circuit Court of Appeals has stated:

> Advice of counsel may be a defense in a criminal contempt proceeding because it negates the element of willfulness. But, since lack of willfulness is not a defense in a proceeding for civil contempt as *McComb [v. Jacksonville Paper Co.]*,

336 U.S. [187, at] 191, 69 S.Ct. 497[, 93 L.Ed. 599] (1949), holds, its negation is not a defense to the action. This case, rather, falls under the rule of *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–634, 82 S.Ct. 1386, 1390–1391, 8 L.Ed.2d 734 (1962), to the effect that one cannot voluntarily choose an attorney and then avoid the consequences of the attorney's acts or omissions.

17. The question then becomes whether punitive damages should also be imposed. Most courts assess punitive damages for violation of the discharge injunction, if it is based upon egregious or vindictive conduct. *In re Carrigan*, 109 B.R. 167, 172 (Bankr.W.D.N.C.1989) citing *In re Midkiff*, 85 B.R. 467 (Bankr.S.D.Ohio 1988); *In re Cherry*, 247 B.R. at 191 (Bankr.E.D.Va.2000); *In re Arnold*, 206 B.R. at 566 (Bankr.N.D.Ala.1997).

18. In this instance, it is appropriate to award punitive damages, but only as against Gavenus. While all of the Respondents' are guilty of a willful discharge violation, the driving force behind this was Gavenus. The evidence does not suggest that the Ponds' conduct was egregious or malevolent. As lay people, the Ponds could be expected to give deference to Gavenus' assertions that the State Action could be prosecuted.

19. Gavenus, however, poses a different problem. The Court is very concerned with Gavenus' behavior in these matters— and more so because he is an attorney, and an officer of the court.

20. Upon this record, it is clear that when the State Action was set for trial, and Bock was unable to produce a copy of her discharge, Gavenus saw an opportunity to collect a debt which he knew was legally unenforceable. By refusing to acknowledge Bock's discharge, and in insisting that the state trial go forward, Gavenus

intentionally ignored the bankruptcy laws and his duty of candor to the state court. He intentionally misled Judge Caviness.[4]

21. Although advised by Laney that this prosecution was illegal, Gavenus withheld this information from the state court, feigned ignorance of Bock's discharge, and thereby forced Bock to endure a four-day trial. After trial, when confronted with irrefutable evidence of Bock's discharge, Gavenus continued to subvert the bankruptcy laws, and to further mislead the state court with his sophistic defense of "waiver of discharge by failure to plead."[5] Finally, in this proceeding, Gavenus appears to have filed false pleadings and given false testimony.[6]

22. This set of facts would justify severe sanctions on any party. However, because he is an attorney, Gavenus' conduct is particularly reprehensible.

23. Attorneys are officers of the court, and have a weighty responsibility to uphold the law.

24. Both under State Rules of Professional Conduct and federal law, an attorney bears a duty of candor to a tribunal. Rule 3.3(d) of the North Carolina Rules of Professional Conduct requires an attorney to disclose to the tribunal all material facts necessary to enable the tribunal to make an informed decision, whether or not the facts are adverse to the lawyer's cause.

25. Similarly, the Fourth Circuit has stated:

> It is important to reaffirm, on a general basis, the principle that lawyers, who serve as officers of the court, have the first line task of assuring the integrity of the process. Each lawyer undoubtedly has an important duty of confidentiality to his client and must surely advocate his client's position vigorously, but only if it is truth which the client seeks to advance. The system can provide no harbor for clever devices to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end. It is without note, therefore, that we recognize that the lawyer's duties to maintain the confidences of a client and advocate vigorously are trumped ultimately by a duty to guard against the corruption that justice will be dispensed on an act of deceit. *See* 1 Geoffrey C. Hazard, Jr. and W. William Hodes, *The Law of Lawyering* 575–76 (1990) ("[W]here there is danger that the tribunal will be misled, a litigating lawyer must forsake his client's immediate and narrow interests in favor of the interests of the administration of justice itself."). While > Rule 3.3 articulates the duty of candor to the tribunal as a necessary protection of the decision-making process, *see Hazard* at 575, and Rule 3.4 articulates an analogous duty to opposing lawyers, neither of

---

4. Gavenus appears not to understand that a person can mislead by his silence. In the current matter, he testified that Bock and her attorney never mentioned the bankruptcy to the Superior Court. If they had, he says, he would have been forced to admit that to the Court that she had in fact been discharged. Since they did not (his testimony), he had no obligation to inform the Court. This evidence is false, but even if true, counsel has violated his duty of candor to the state court under State Bar rule 3.3. *See* North Carolina State Bar Rule 3.3 (2002).

5. The defense is not credible. The Bankruptcy filing stayed further prosecution of the State Action against Bock. The discharge made this stay permanent. As such, there was never a point in which Bock would have been required to amend her Answer in the State Action to assert a discharge.

6. Gavenus' testimony that neither Bock nor her attorney mentioned a bankruptcy discharge during the state court trial was contradicted by each of the other witnesses, including his client, Karl Pond.

these rules nor the entire Code of Professional Responsibility displaces the broader general duty of candor and good faith required to protect the integrity of the entire judicial process.

*United States v. Shaffer Equipment Co., et al.,* 11 F.3d 450, 457–8 (4th Cir.1993).

26. Attorney Gavenus failed miserably to meet his duties of candor, both to the State Court and to the Bankruptcy Court.

27. Punitive damages in the amount of $5,000 shall be imposed against Gavenus.

28. Seeking to avoid liability, Respondents have asserted a plethora of defenses, each of which ultimately fails.

29. First, Respondents contend that this action is time-barred, under N.C.G.S. § 1–52. Section 1–52, the catch-all statute of limitations for state actions prescribes a three-year period for filing suit for many causes of action. However this state statute applies only to state law causes of action. The current matter is a motion under a federal statute—11 U.S.C. § 524, and a question of contempt of a federal court order. N.C.G.S. § 1–52 is inapplicable. This motion was timely filed.

30. Respondents also contend Bock somehow waived her discharge. The Court disagrees. The debtor attempted to assert her rights the first time her discharge was called into controversy, at the state court calendar call. Certainly, it is not her fault that the Respondents were able to mislead the State Court by feigning ignorance of her discharge. While it would have been better for Bock if she had been able to produce a copy of her discharge, it shouldn't have mattered. This problem was caused by the Respondents', and not Bock.

31. The Respondents' next argue that this matter is an action to collect money, and under F.R.B.P. § 7001 (2001),

could not have been pursued by a motion. They say an adversary was required. Again, this Court disagrees. As noted above, this is a matter of contempt of a court order. No adversary is mandated by the Rules, and the fact that Bock hopes to recover her damages does not change this. A Section 362 stay violation can be pursued by motion. So may a Section 524 discharge violation.

32. In any event, this argument elevates form over substance. Bock's motion was just as detailed as a complaint, an opportunity for discovery was afforded to the Respondents, and the matter was tried under the same rules that apply to adversary proceedings. Having themselves failed so miserably in following the bankruptcy law, Respondents are not in a position to insist on perfect procedural practice by their opponent.

33. Perhaps the Respondents' best argument is that the *Rooker–Feldman Doctrine* bars this litigation. Under their theory, the State Court had concurrent jurisdiction over this matter, determined the dischargeability of the Pond's claim in the trial, and this Court is obliged to honor this decision.

34. The *Rooker–Feldman Doctrine* is based upon two Supreme Court decisions, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362. (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Generally, the doctrine eschews inferior federal courts (excepting the U.S. Supreme Court) acting as appellate courts over matters tried in the State Court. *In re T. Brian Glass,* 240 B.R. 782 (Bankr.M.D.Fla.1999).

35. However, the *Rooker–Feldman Doctrine* does not apply to the current situation. In the first place, it is questionable whether Judge Caviness intended to

determine whether the Pond's claim was dischargeable under the Section 523(a) elements. It appears that the State Court thought Bock was trying to delay the trial by falsely claiming to have been discharged. Regrettably, this is a tactic often used by account debtors to avoid their creditors. The record does not clearly indicate that the State Court was ruling on dischargeability.

36. One can also doubt whether procedural due process would have been afforded to Bock in such a proceeding, since nondischargeability was not alleged in the Complaint and the issue did not arise until the day the State Action was called for trial. Does the *Rooker–Feldman Doctrine* require that full faith and credit be given to such an Order?

37. However, these issues need not be decided. With all due respect to Judge Caviness, even if she had intended to determine dischargeability, that court lacked subject matter jurisdiction to do so.

■ 38. As Respondents point out, state courts have concurrent jurisdiction with the bankruptcy courts to determine dischargeability of some debts. 28 U.S.C. 1334(b) (2001); *In re Toussaint,* 259 B.R. 96, 99 (Bankr.E.D.N.C.2000). And some of these dischargeability determinations can even be made after the bankruptcy is over. However, this is not true as to all types of debts.

■ 39. In enacting Section 523(c), Congress required dischargeability objections to certain debts be filed only in bankruptcy court and within a very restricted time frame.[7] Debts occasioned by fraud or false pretenses [Section 523(a)(2) ]; fraud or defalcation while acting in a fiduciary capacity [Section 523(a)(4) ]; and

willful and malicious injury [Section 523(a)(6) ] must be filed in the bankruptcy court, and within sixty days of the first meeting.[8] It is undisputed that the Pond's claim falls within these subparts of Section 523.

40. As such, the Pond's dischargeability action could only have been filed in this bankruptcy court, and only before the case was over. Because the Pond's did not file such an action, the claim was discharged, and thereafter no court could hold to the contrary. In short, the State Court lacked subject matter jurisdiction to determine dischargeability of this debt.

■ 41. Section 524(a)(1) voids any judgment obtained at any time to the extent the judgment is a determination of debtor's personal liability with respect to any discharged debt. Therefore, to the extent that the judgment in the State Action held otherwise, it was void ab initio. The parties have so stipulated in this Court's July 27, 2001 Order.

■ 42. Under the *Rooker–Feldman Doctrine,* a federal court with jurisdiction over the matter may set aside a legally void state court order. *See Feldman,* 460 U.S. at 478, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

44. It follows that the *Rooker–Feldman Doctrine* does not obligate this Court to follow the Superior Court decision.

IT IS THEREFORE ORDERED:

1. Respondents, and each of them, and all others acting on their behalf, are permanently enjoined from attempting to assert the aforementioned claim as against the Debtor, Marguerite S. Bock.

---

7. Sixty days after the date first scheduled for the Section 341 creditor's meeting of creditors, unless otherwise extended.

8. 11 U.S.C. § 523(c) (2001).

2. Respondents are in civil contempt of court for their willful violation of the discharge order.

3. To purge their contempt, and as redress, Respondents are ordered to pay to Bock the following sums, within 30 days of entry of this order:

a. Actual Damages in the sum of $420.00; and

b. Attorneys' fees and costs of $8,776.81.

These amounts shall be a joint and several liability of the Respondents.

4. Additionally, Respondent Gavenus is ordered to pay to Bock punitive damages in the amount of $5,000.00.

5. A compliance hearing shall be conducted on March 7, 2002 at the Wilkesboro Federal Courthouse, 207 West Main Street, Courtroom No. 201, Wilkesboro, N.C., at 3:00 p.m.

6. A copy of this order will be forwarded to the North Carolina State Bar and to the Avery County Superior Court.

SO ORDERED.