In re Zachary S. FELDMEIER and Angela S. Feldmeier.

No. 304–30583–tmb7.

United States Bankruptcy Court, D. Oregon.

Nov. 17, 2005.

Damien Yervasi, Yervasi Pope, PC, Baker City.

Danial Judge, Lenahan Law Office, West Seneca, NY.

TRISH M. BROWN, Bankruptcy Judge.

This matter came before the court on a telephone evidentiary hearing on September 7, 2005, on the Motion of Debtors, Zachary Feldmeier and Angela Feldmeier, (hereinafter "Debtors") to Show Cause why Providian National Bank (hereinafter "Providian") and the Lenahan Law Firm (hereinafter "Lenahan") should not be held in contempt of court based on their alleged violation of the discharge injunction provided by 11 U.S.C. § 524. Debtors were represented by Damien Yervasi. Providian, which was represented by Stephen Redshaw, was dismissed from this proceeding by agreement of the Debtors after providing evidence that it had no post petition contact with either the Debtors or Lenahan. Lenahan did not appear although it was aware of the Motion and the hearing on the motion. On August 7, 2005, the court served Lenahan with notice of the show cause hearing and notice that the hearing would be conducted via telephone. Lenahan was also served with the Debtors' Witness List, Exhibit List, and Exhibits via certified mail on August 25, 2005, by Debtor's counsel.

Following the hearing I took this matter under advisement. I have reviewed my notes, the exhibits, and the pleadings and other submissions in the file. I also have read applicable legal authorities, both as cited to me and as located through my own research. I have considered carefully the oral testimony and arguments presented and have read counsel's submissions in detail. The following findings of fact and legal conclusions constitute the court's findings under Federal Rule of Civil Procedure 52(a), applicable in this contested matter under Federal Rule of Bankruptcy Procedure 9014.

## FACTS

In May 1999, Providian issued a credit card to Angela Feldmeier. It sold the

account to Vision Management in July 2003, but apparently failed to advise Ms. Feldmeier of that fact.

On January 27, 2004, Debtors filed a voluntary chapter 7 proceeding and scheduled Providian as a creditor. On or about January 30, 2004, the court notified Providian of the filing of the Plaintiff's bankruptcy case. Lenahan was not listed on the schedules or the mailing matrix in this case.

In March 2004, Mr. Feldmeier's mother told him that she had received a telephone call from Lenahan advising her that it was attempting to collect a debt owed to Providian by Ms. Feldmeier. At Mr. Feldmeier's request, Heidi Johnson, a paralegal employed by Debtor's attorney, Damien Yervasi, contacted Lenahan and advised the representative to whom she spoke that the Yervasi firm represented the Debtors who had filed bankruptcy. She asked if the firm needed a copy of the petition and the representative advised her that it did not and that he would note the bankruptcy filing in Ms. Feldmeier's file.

The Debtors received their discharge on May 18, 2004. A discharge notice was mailed to all the scheduled creditors on May 20, 2004. Providian was also electronically served with a copy of the discharge notice on May 19, 2004. Debtors heard nothing further from either Providian or Lenahan until April 2005. At that time Mr. Feldmeier's mother received the following message on her home answering machine:

"This message is for Angela Feldmeier. This is investigator Miles Gains calling from the County Clerk's office in regards to an affidavit of charges that has been forwarded over to my office there and to serve a subpoena to your residence or place of employment. It appears that a civil, possible criminal case has been filed with prosecuting attorney

Daniel Lenahan. Former attempts have been made by this law office to contact you, notify you of the charges that have been filed in your county. If you have any intentions on contacting the attorney, you can contact them at 800–850–9077. Speak with one of their legal assistants regarding case count number 1225515347. At this time I'm going to give you 24 hours to get a claim on this matter and give you a chance to reach the attorney's office."

Mr. Feldmeier called the number given in the message and was told that he had reached Lenahan. He spoke with a representative of the firm who told him that Lenahan was attempting to collect a debt owed to Providian by Angela Feldmeier.

After speaking with the Lenahan representative Mr. Feldmeier again contacted Ms. Johnson at the Yervasi firm. Ms Johnson called Lenahan and spoke with Richard Carrone who identified himself as a representative of the firm. Ms. Johnson advised Mr. Carrone that Ms. Feldmeier had filed bankruptcy and discharged the debt that Lenahan was attempting to collect. She also advised him that the Yervasi firm continued represent the Debtors and that further contact with the Debtors should be made through the Yervasi firm. Mr. Carrone told Ms. Johnson that he was unaware of the filing as Lenahan had not run a credit report prior to contacting the Debtors but that he would make a notation in his file regarding the filing.

On April 5, 2005, Debtors' attorney sent a letter to Mr. Carrone at the office of David Lenahan stating:

"Your company has been hired to collect on a pre-filing debt that was discharged in their bankruptcy. Under federal law it is illegal for a creditor to attempt to collect on a pre-filing debt from a debtor during the pendency of their Bankrupt-

cy case. It is also illegal to attempt to collect on a pre-filing debt after a debtor has received a discharge in his or her case. In addition, these collection attempts may also be in violation of Oregon's Unlawful Debt Collection Act and the Federal Fair Debt Collection Practices Act.

Please cease all collection efforts against our clients. If my clients are contacted again, legal action will be taken...."

Copies of both the Notice of the Debtors' bankruptcy filing and a copy of their Discharge Order were enclosed with this letter.

On May 16, 2005, Lenahan sent Ms. Feldmeier a letter dated May 9, 2005, advising her that it was attempting to collect a debt owed to Providian and giving her 7 days within which to remit the money allegedly owed to Providian. The letter stated that if Ms. Feldmeier did nothing Lenahan might "refer this matter to an attorney in your area for legal consideration." The letter further advised that if Lenahan obtained a judgement in its favor it would "collect payment utilizing all methods legally available."

Both Mr. and Ms. Feldmeier testified that when told of the April 2005, telephone call Ms. Feldmeier was very distraught, upset, and frightened, believing that there was a possibility that she would be sent to jail. In addition, Ms. Feldmeier, who worked at a bank, testified that she was concerned that the bank would learn of the lawsuit threatened by Lenahan. Although she stated that she did not believe that the bank would fire her if she was sued, she testified that it would have been embarrassing to have her colleagues learn of a lawsuit against her. Ms. Feldmeier also testified that she was frustrated and upset by the fact that Lenahan continued to attempt to collect the Providian debt, despite having been repeatedly advised that

the debt had been discharged. Mr. Feldmeier also testified that he was concerned that his wife might go to jail.

## LEGAL ANALYSIS

*Violation of the Discharge Injunction*

■ Section 524(a)(2) provides that a discharge in a case under Title 11 "operates as an injunction against the commencement or continuation of an action ... to collect, recover or offset any [discharged] debt as a personal liability of the debtor ...." Section 524 does not provide a private right of action for debtors injured by a creditor's violation of the discharge injunction. *Walls v. Wells Fargo Bank,* 276 F.3d 502, 509 (9th Cir.2002).

■ However,

"[S]ection 524(a) may be enforced by the court's contempt power under 11 U.S.C. section 105(a). *See Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 509 (9th Cir.2002) (footnote omitted); *see also Caldwell v. Unified Capital Corp.* (*In re Rainbow Magazine, Inc.*), 77 F.3d 278, 284 (9th Cir.1996) (noting that '[t]here can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court' as recognized by the statutory grant of power to the bankruptcy courts under 11 U.S.C. section 105(a)), *accord Bessette v. Avco Financial Servs., Inc.,* 230 F.3d 439, 444–445 (1st Cir.2000); *Hardy v. United States* (*In re Hardy*), 97 F.3d 1384, 1388–89 (11th Cir.1996). The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *F.T.C. v. Affordable Media,* 179 F.3d

1228, 1239 (9th Cir.1999) (citation omitted). As discussed by the Eleventh Circuit in *Hardy*, to justify sanctions, the movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction. *See Hardy*, 97 F.3d at 1390 (*citing Jove Eng'g, Inc. v. Internal Revenue Service*, 92 F.3d 1539, 1555 (11th Cir.1996)). *Renwick v. Bennett* (*In re Bennett*), 298 F.3d 1059, 1069 (9th Cir.2002).

■ Here the Debtors established that Lenahan had actual knowledge of their bankruptcy filing as of March 2004, when Ms. Johnson spoke with a representative of the firm and advised him of that filing. She asked if the firm wanted documentation and was told no. Despite that fact, in April and May 2005, long after the Debtors' discharge, Lenahan made further efforts to collect the debt allegedly owed to Providian. I find, therefore, that Lenahan knew or should have known of the existence of the discharge injunction and that its post-discharge collection efforts was a willful violation of the discharge injunction and that the nature of the contacts with the Debtors was egregious. Lenahan did not appear for this hearing and has failed to provide the court with any explanation as to why it was unable to comply with the terms of the discharge injunction. Accordingly, I find Lenahan in contempt of court based on its violation of the discharge injunction.

*Contempt Sanctions under Section 105(a)*

1. *Punitive Damages*

■■ In its April 2005, telephone message Lenahan represented that the call had been placed by a representative of the County Clerk's office, that civil and possibly criminal charges had been filed against Ms. Feldmeier, and that Mr. Lenahan was a *prosecuting* attorney employed by the County. These representations were false and Lenahan knew or should have known that they were false. This conduct, clearly designed to scare the Debtors into paying the debt allegedly owed to Providian, was egregious and warrants the imposition of sanctions. Had I the power to do so, I would award punitive damages to the Debtors based on this conduct. Unfortunately, I do not. *See Knupfer v. Lindblade*, 322 F.3d 1178, 1193 (9th Cir.2003). "Rather, the language of § 105(a) authorizes only those remedies 'necessary' to enforce the bankruptcy code. The sanctions associated with civil contempt—that is, compensatory damages, attorney fees, and the offending creditor's compliance—adequately meet that goal." *Id.* at 1193 (citation omitted).

2. *Compensatory Damages*

The Debtors provided no evidence as to any actual monetary damages, beyond their attorneys' fees, sustained by them. They contend, however, that in addition to recovering their attorney's fees, they are entitled to emotional distress damages based on Lenahan's violation of the discharge injunction.

■ The issue of whether emotional distress damages are available for violations of the discharge injunction has not been addressed by the Ninth Circuit. Those courts which have addressed the issue have come to differing conclusions. *See McBride v. Coleman*, 955 F.2d 571, 577 (8th Cir.1992) ("we do not believe civil contempt to be an appropriate vehicle for awarding damages for emotional distress .... The problems of proof, assessment, and appropriate compensation attendant to awarding damages for emotional distress are troublesome enough in the ordinary tort case, and should not be imported into civil contempt proceedings ... the con-

tempt power is not to be used as a comprehensive device for redressing private injuries, and it does not encompass redress for injuries of this sort."), *Burd v. Walters (In re Walters)*, 868 F.2d 665, 670 (4th Cir. 1989) ("no authority is offered to support the proposition that emotional distress is an appropriate item of damages for civil contempt, and we know of none."), *In re Bock*, 297 B.R. 22, 29 (Bankr.W.D.N.C.2002)(" emotional distress damages are not recoverable in a civil contempt proceeding") *But see U.S. v. Torres*, 309 B.R. 643, 650 (1st Cir. BAP 2004) (an award of emotional distress damages for violation of the discharge injunction is permissible.), *In re Reno*, 299 B.R. 823, 828 (Bankr.N.D.Tex.2003) (compensation for civil contempt may include emotional distress damages.)

Although the Ninth Circuit has not spoken on this issue, I believe its opinion on the availability of emotional distress damages for violation of the automatic stay is instructive. In *Dawson v. Washington Mutual Bank (In re Dawson)*, 390 F.3d 1139, 1148 (9th Cir.2004), the court concluded that "emotional distress damages are cognizable" for violation of the automatic stay provided for in § 362(a) of the Code. The court acknowledged that the text of the statute, which allows a debtor injured by a violation of the stay to collect "actual damages" "does not provide a definition for 'actual damages.'" It found, however, that "[t]here is a contextual clue ... that lends support to Plaintiffs' theoretical position [that such damages are recoverable."] *Id.* at 1146. The "clue" to which the court referred was the fact that "Congress chose the term 'individual' to describe those who are eligible to claim actual damages under § 362(h)." *Id.* at 1146. The court reasoned that "[b]y limiting the availability of actual damages under § 362(h) to individuals, Congress signaled its special interest in redressing

harms that are unique to human beings. One such harm is emotional distress, which can be suffered by individuals but not by organizations." *Id.* at 1146.

The court also noted that the purpose of the stay, as articulated in the legislative history of § 362(a) was not only to give the debtor time to reorganize but to provide a breathing spell for the debtor by stopping harassment from creditors and to give "due regard to the dignity of the consumer as an individual who is in need of help." *Id.* at 1148. Relying on this history, the court found that in enacting § 362(a) "Congress was concerned not only with financial loss, but also—at least in part—with the emotional and psychological toll that a violation of the stay can exact from an individual." *Id.* at 1148. The court went on to find that "[b]ecause Congress meant for the automatic stay to protect more than financial interests, it makes sense to conclude that harm done to those non-financial interests by a violation are cognizable as 'actual damages.'" *Id.* at 1148. It, therefore, concluded that "the 'actual damages' that may be recovered by an individual who is injured by a willful violation of the automatic stay ... include damages for emotional distress ... that results specifically from a willful violation of the automatic stay." *Id.* at 1148.

▮▮▮ The legislative history of the discharge injunction, like that of the automatic stay, recognizes that the injunction is intended to protect more than financial interests. Among the collection activity prohibited by the discharge injunction are "telephone calls, letters, and personal contacts." H.R.Rep. No. 595, 95th Cong, 1st Sess 365–366 (1977); S. Rep no. 989, 95th Cong.2d Sess 80 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6321, 5787, 5866. This prohibition is intended to "insure that once a debt is discharged, the

debtor will not be pressured in any way to repay it." *Id.* Thus, the contempt remedy, which provides for an award of "compensatory damages," should include compensation for emotional distress suffered by a debtor as a result of a creditor's willful violation of the discharge injunction.

■ Having determined that emotional distress damages are available for violations of the discharge injunction, I must now determine whether the debtor have established that they are entitled to such damages under the facts of this case. In *Dawson* the court held that "a claim for emotional distress damages is available if the individual provides clear evidence to establish that significant harm occurred as a result of the violation . . . ." *Dawson* at 1148–49. The court noted that the Seventh Circuit, in *Aiello v. Providian Fin. Corp.*, 239 F.3d 876 (7th Cir.2001) "required that an individual suffer a financial loss in order to claim emotional distress damages." *Dawson* at 1149. The *Dawson* court declined to follow that reasoning, based on the Seventh Circuit's conclusion that § 362(h) was only intended to protect financial interests, because it had concluded "that the purpose of § 362(h) encompasses more than protection of financial interests and because that statute does not suggest that any one form of damages is dependent on the existence of another form of damages." *Dawson* at 1149. Having concluded that "pecuniary loss is not required in order to claim emotional distress damages" the court went on to hold that "not every willful violation [of the automatic stay] merits compensation" for such damages. *Id.* at 1149. Rather, it held that:

"to be entitled to damages for emotional distress under § 362(h), an individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between the significant harm and the violation of the automatic stay . . . . Fleeting or trivial anxiety or distress does not suffice to support an award; instead, an individual must suffer significant emotional harm." *Id.* at 1149.

The court held that such harm could be established "in several different ways" including "[c]orroborating medical evidence," testimony by "non-experts, such as family members, friends, or coworkers" as to "manifestations of mental anguish [which] clearly establish that emotional harm occurred." In addition, the court held that "[i]n some cases significant emotional distress may be readily apparent even without corroborative evidence" such as when a creditor engages in egregious conduct "[o]r, even if the violation of the automatic stay was not egregious, the circumstances may make it obvious that a reasonable person would suffer significant emotional harm." *Id.* at 1149—1150.

Here there the Debtors presented no medical evidence to show that Ms. Feldmeier suffered emotional distress. Both Debtors testified as to the stress caused to the Debtors, especially Ms. Feldmeier by the threatening telephone call. Lenahan's conduct in threatening to bring criminal charges by a "prosecuting attorney" against Ms. Feldmeier, coupled with the fact that *it left the threatening message with a third party,* Mr. Feldmeier's mother, was egregious conduct. Moreover, I find that a "reasonable person" would suffer significant emotional harm from this conduct. As discussed below, such conduct is a violation of the Code of Professional Responsibility in New York and the Rules of Professional Conduct adopted by the Oregon State Bar. Not only was Lenahan's conduct a willful violation of the discharge injunction, there can be no doubt about the intent to cause the emotional distress suffered by Ms. Feldmeier. Why

else would Lenahan threaten criminal action if not to cause enough distress for a debtor to pay a discharged debt?

■ I find that Ms. Feldmeier is entitled to emotional distress damages in the amount of $10,000. In addition, Debtors are entitled to recover their reasonable attorney fees incurred in prosecuting this Show Cause motion.

*Violation of State Bar Rules*

■ The Lawyer's Code of Professional Conduct ("New York Code") adopted by the State of New York Bar Association provides that:

"A. During the course of the representation of a client a lawyer shall not:

1. Communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so." New York State Bar Association Lawyer's Code of Professional Responsibility DR 7–104.

The Rules of Professional Conduct ("Oregon Rules of Professional Conduct") adopted by the Oregon State Bar similarly restrict a lawyer's right to contact a represented party. *See* Oregon Rules of Professional Conduct 4.2. In addition, both the New York Code and the Oregon Rules of Professional Conduct contain provisions prohibiting a lawyer from presenting or threatening to present criminal charges solely to gain an advantage in a civil matter. New York State Bar Association Lawyer's Code of Professional Responsibility DR 7–105 and Oregon Rules of Professional Conduct 3.4(g).

Lenahan was advised in March 2004, that the Yervasi firm was representing the Debtors in connection with the debt that Lenahan was attempting to collect. Despite knowledge of the representation, Lenahan subsequently contacted the Debtors directly, without consent of their lawyer, in an attempt to collect the alleged debt owed to Providian. In addition, Lenahan threatened to bring criminal charges against Ms. Feldmeier and suggested in fact that it was a prosecutor contacting the Debtors despite the fact that it apparently had possession of no facts which would support such a charge. Thus, it appears that the sole purpose for making threats of criminal prosecution was to attempt to coerce Ms. Feldmeier into paying the debt allegedly owed to Providian. Thus, Lenahan's actions violated the New York Code and Oregon Rules of Professional Conduct in at least two respects. In light of this fact, I will forward a copy of this opinion to both the Oregon and New York State Bar Associations' disciplinary committees for their review.

Mr. Yervasi should submit an order consistent with this ruling and his application for attorney fees within 10 days of the date of this letter.